## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 10-55500 (SPS) |
| H.H. Holmes Testing Laboratories, | ) | (Jointly Administered) |
| Inc., *et al.*,[1] | ) | |
| | ) | Judge Susan Pierson Sonderby |
| | ) | |
| | ) | Hearing Date: March 6, 2012 |
| Debtors. | ) | Hearing Time: 10:00 a.m. |

## SUMMARY OF FINAL APPLICATION OF
## NEAL WOLF & ASSOCIATES, LLC FOR ALLOWANCE OF COMPENSATION
## AND REIMBURSEMENT OF EXPENSES AS COUNSEL FOR
## THE DEBTORS AND DEBTORS IN POSSESSION

Name of Applicant:                                      Neal Wolf & Associates, LLC

Authorized to Provide Professional Services to:        Debtors and Debtors in Possession

Date of Order Authorizing Employment:                  April 14, 2011 *nunc pro tunc* to
                                                       March 16, 2011

Period for Which Compensation is sought:               March 16, 2011 through December 9, 2011

Amount of compensation sought:                         $192,057.00

Amount of expense reimbursement sought:                $4,972.93

Type of Fee Application:                               Final Fee Application

*[The remainder of this page intentionally left blank.]*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are H.H Holmes Testing Laboratories, Inc. (9722) and Nelson Leasing (0745).

This is the first fee and expense application filed by Neal Wolf & Associates, LLC.  It has received no interim payments in these cases.

Dated: February 14, 2012

By: /s/ Dean C. Gramlich
Neal L. Wolf (ARDC No. 6186361)
Dean C. Gramlich (ARDC No. 6191587)
NEAL WOLF & ASSOCIATES, LLC
Counsel to Debtors Holmes Testing Laboratories, Inc.
and Nelson Leasing
155 N. Wacker Drive, Suite 1910
Chicago, IL 60606
Main: (312) 228-4990
Fax:  (312) 228-4988
Email: dgramlich@nealwolflaw.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-55500 (SPS) |
| H.H. Holmes Testing Laboratories, | ) | (Jointly Administered) |
| Inc., *et al.*,[1] | ) | |
| | ) | Judge Susan Pierson Sonderby |
| | ) | |
| | ) | Hearing Date:   March 6, 2012 |
| Debtors. | ) | Hearing Time: 10:00 a.m. |

**FINAL APPLICATION OF NEAL WOLF & ASSOCIATES, LLC**
**FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT**
**OF EXPENSES AS COUNSEL FOR THE**
**DEBTORS AND DEBTORS IN POSSESSION**

Neal Wolf & Associates, LLC ("NW&A"), as counsel to H.H. Holmes Testing

Laboratories, Inc. ("Holmes Laboratories") and Nelson Leasing, the Debtors and Debtors in

Possession (collectively, the "Debtors") in the above-captioned cases (the "Cases"), hereby

applies for final approval and allowance of fees in the amount of $192,057.00 and

reimbursement of expenses in the amount of $4,972.93 for the period March 16, 2011

through and including December 9, 2011 ("Final Application Period").  NW&A further

requests that the Court direct CenTrust Bank, N.A. ("CenTrust") to pay to NW&A a pro rata

portion of the chapter 11 professional carve out fund previously established by order of this

Court pursuant to the procedures outlined therein.


**I.**   **FACTUAL BACKGROUND**

   **A.**   **General Case Status**

   1.   On December 16, 2010 (the "Petition Date"), the Debtors filed voluntary petitions

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are H.H Holmes Testing Laboratories, Inc. (9722) and Nelson Leasing (0745).

for relief under chapter 11 of the Bankruptcy Code (the "Cases").

2.      The Debtors remained in possession of their assets and operated as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until December 28, 2011.

3.      On December 28, 2011, the Court entered orders dismissing the Nelson Leasing chapter 11 case and converting the Holmes Laboratories case to chapter 7. David Leibowitz was subsequently appointed interim chapter 7 trustee.

4.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the Declaration of Scott R. Nelson in Support of the Debtors' Petitions and First Day Motions (the "Nelson Declaration") filed on December 20, 2010, at Dkt. No. 20.

5.      On January 13, 2011, the Court entered its Order Authorizing the Application of the Debtors to Employ and Retain Butler Rubin Saltarelli & Boyd LLP as Their Attorneys Pursuant to 11 U.S.C. Sections 327(a) and 329, Dkt. No. 52 ("BRSB Retention Order"). Until March 16, 2011, BRSB represented the Debtors, with Neal L. Wolf continuing to act as their lead counsel in connection with the sale of the business, the negotiation of a chapter 11 plan and other matters.

6.      On March 16, 2011, Neal L. Wolf transferred his practice to his new law firm, NW&A. One of the attorneys working on these cases at BRSB, Gerald F. Munitz, also became an attorney at NW&A on that date.

7.      On April 6, 2011, the Debtors filed their Application to Employ and Retain Neal Wolf & Associates, LLC as Their Attorneys and to Release Butler Rubin Saltarelli & Boyd.

8.      The Court approved the retention of NW&A, as counsel to the Debtors, pursuant
to its Order Approving the Application of the Debtors to Employ and Retain Neal Wolf &
Associates, LLC as Their Attorneys, signed on April 13, 2011, Docket No. 128 (the "Retention
Order"). The Retention Order, *inter alia,* approved the retention of NW&A effective as of
March 16, 2011.

9.      Subsequent to entry of the Retention Order, NW&A has acted as sole counsel
to the Debtors in connection with these cases. NW&A continues to act as counsel to debtor
Holmes Laboratories in the chapter 7 case.

### B.      Jurisdictional and Statutory Basis for this Final Application

10.      The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.
§§ 157(b) (2) and 1334. The venue of these Cases and this First Interim Application is
proper in accordance with 28 U.S.C. §§ 1408 and 1409.

11.      NW&A makes this Final Application pursuant to: (a) sections 328, 330 and
331 of the Bankruptcy Code, (b) Rule 2016(a) of the Federal Rules of Bankruptcy Procedure
("Bankruptcy Rules"), (c) Rule 5082-1 of the Bankruptcy Rules of the United States District
Court and the United States Bankruptcy Court for the Northern District of Illinois, effective
as of January 1, 2012 and as amended ("Local Rules").

## II.   STATUS OF NW&A'S FEES AND EXPENSES, DISCOUNTS AND EXHIBITS

12.      NW&A has not previously filed any interim or monthly fee and expense
applications in this case.

13.      In connection with the compensation and expenses sought herein, neither
NW&A nor its sole member, Neal L. Wolf, has received or been promised any
compensation for services rendered or to be rendered in any capacity in connection with this

case other than as set forth herein.

14.    No agreement or understanding exists between NW&A and any third party for the sharing of compensation.

15.    All of the services for which NW&A requests compensation were rendered solely at the request of the Debtors and not on behalf of any other person or entity.

16.    To assist the Court, the Debtors, the U.S. Trustee and the various parties in interest in analyzing NW&A's fees and expenses during the Final Application Period and as otherwise required, NW&A has attached the following exhibits:

a.    In accordance with Local Rule 5082-1(B)(1)(e), **Exhibit A** hereto is a timekeeper summary showing the hourly rate of each attorney and legal assistant for whom compensation is requested, with the total number of hours expended and total compensation requested for each such attorney and legal assistant during the Final Application Period.

b.    In accordance with Local Rule 5082-1(B)(1)(a), **Exhibit B** hereto is a summary list showing all activity categories into which NW&A organized its work and the total fees in each such category.

c.    In accordance with Local Rule 5082-1(b)(1)(d), **Exhibit C** hereto is a summary showing each professional who performed work in a given activity category, the hours worked in each activity category by each such professional and the total compensation requested by that professional in each activity category.

d.    In accordance with Local Rule 5082-1(B)(1)(b) and (C), **Group Exhibit D** consists of NW&A's invoice for the Final Application Period. Group Exhibit D describes in detail each activity performed by a billing professional divided by activity category and showing (i) the date the work was performed; (ii) the name of the professional

performing the work; (iii) a brief statement showing the nature of the work; and (iv) the time

expended on the work in tenth of an hour increments.

     e.     In accordance with Local Bankruptcy Rule 5082-1(B)(1)(g), **Exhibit E**

hereto is a summary showing the total expenses for which reimbursement is sought broken

down by expense category.

     17.     In addition to the foregoing Exhibits, **Exhibit F** hereto is the Declaration of

Dean C. Gramlich in support of the Final Application and **Exhibit G** hereto is a proposed

form of order approving the Application.

## III.   NARRATIVE STATEMENT

### D.   General Summary

     18.     NW&A hereby seeks final approval and allowance of compensation earned

during the Final Application Period in the amount of $192,057.00 and allowance of

expenses in the amount of $4,972.93. Because the Debtors have no funds to pay NW&A,

any recovery would be limited to a pro rata portion of the carve out fund from the cash

collateral of CenTrust established under paragraph 9(f) of the Court's Order Authorizing (A)

the Sale of Assets Free and Clear of All Liens, Claims, Interests, and Other Encumbrances

and (B) Granting Related Relief, Docket No. 207 ("Holmes Testing Sale Order") (the

"Carve Out Fund"). NW&A expects its recovery on any fees and expenses approved to be

forty cents on the dollar or less. Accordingly, NW&A requests inclusion in any order

approving this Final Application of language directing that CenTrust pay NW&A its pro rata

share of the Carve Out Fund based on the procedures described in the Holmes Testing Sale

Order.

     19.     During the Final Application Period, NW&A advised the Debtors with respect

to a substantial number of bankruptcy matters relating to the preservation of the estate and

the promulgation of a chapter 11 plan. At the ultimate resolution of the case, the majority of

the business of Holmes Laboratories was sold to Holmes Testing, Inc. ("Holmes Testing").

Holmes Testing has continued to operate the business and preserve the jobs of the

approximately 50 employees. Additionally, the Holmes Laboratories assets located in

Richardson, Texas were sold to a separate purchaser, D&S Engineering Labs PLLC

("D&S"), who preserved the jobs of the three Texas employees. After closing these two

sales, Holmes Laboratories was left with few remaining assets, and the case was converted

to a chapter 7 case. The case of the second Debtor, Nelson Leasing, was dismissed on

December 28, 2011.

20.    NW&A commenced representation of the Debtors in March of 2011, after

substituting as counsel for Butler Rubin Saltarelli & Boyd ("BRSB"). In March and early

April of 2011, NW&A worked with Silverman Consulting, the Debtors' financial advisor

("Silverman"), on developing a plan of reorganization that involved a proposed purchase of

Holmes Laboratories by an entity that would ultimately result in Disadvantaged Business

Enterprise ("DBE") status for Holmes Laboratories, and would entitle Holmes Laboratories

to certain benefits that would improve its profitability. Unfortunately, in early April, 2011,

the principal of the intended purchaser suddenly and unexpectedly passed away. A

replacement purchaser having the necessary qualifications to entitle Holmes Laboratories to

DBE status could not be found, and the DBE plan became infeasible.

21.    Beginning in April of 2011, NW&A worked with the Debtors and Silverman

to develop an alternate plan to preserve the estate and ensure continued employment of the

employees of Holmes Laboratories. NW&A represented the Debtors in negotiations with its

principal secured creditor, CenTrust, to develop a stand-alone chapter 11 plan and to obtain

additional financing for the Debtors' operations during the pendency of the chapter 11 case. NW&A also represented the Debtors in filing and successfully prosecuting a motion for an extension of the exclusivity periods. NW&A worked with the Debtors to prepare and file monthly operating reports.

22.    Beginning in May, 2011, Windmill Environmental Services, LLC ("Windmill") was introduced as a potential purchaser of most of the Holmes Laboratories business. NW&A represented the Debtors in negotiations with CenTrust and Windmill to establish the structure and terms of the asset purchase agreement. NW&A took the lead in drafting a confidentiality agreement and eventually a term sheet for the proposed transaction. NW&A also took the lead in drafting and filing the necessary sale motion, bid procedures, and other sale-related pleadings. Attorney Dean Gramlich worked extensively on negotiating the terms of the sale and the form and content of the associated pleadings and orders.

23.    The proposed Windmill sale (which was eventually consummated with Windmill's designee, Holmes Testing) was complicated by Holmes Laboratories' possession of certain density gauges which contain radioactive materials regulated by the Nuclear Regulatory Commission and state agencies in Texas and Illinois. NW&A performed substantial research to determine the assignability of the licenses for the gauges and various related issues associated with the sale or transfer of the gauges. NW&A also negotiated with the Nuclear Regulatory Commission and state agencies and ultimately devised a structure under which Holmes Laboratories could essentially maintain ownership and possession while Holmes Testing applied for necessary licenses.

24.    NW&A worked to prepare an asset purchase agreement for the Windmill

purchase, and also worked to draft the necessary closing documents, and resolve outstanding

issues before the closing date.  On December 7, 2011, the Court approved the sale motion,

and the sale to Holmes Testing closed on December 8, 2011.

    25.    Beginning in November, 2011, NW&A began representing Holmes

Laboratories in connection with a separate sale of the Richardson, Texas segment of the

business.  Attorney Dean Gramlich negotiated the terms of the sale with the purchaser,

D&S, and took the lead in drafting and filing the necessary sale motion, bid procedures, and

other sale-related pleadings.  The sale of the Richardson, Texas segment of the business also

involved several gauges having radioactive material regulated by the Texas Department of

Health.  NW&A worked to ensure that the sale of the Richardson, Texas segment of the

business could be structured to permit an assignment of the licenses to D&S which, unlike

Holmes Testing, was an existing licensee under Texas law.

    26.    Furthermore, during the time period from April to August of 2011, attorney

Gramlich worked extensively in connection with multiple stay relief motions filed by

Daimler Chrysler, Ally Financial, and Wells Fargo Leasing regarding their efforts to take

possession of certain leased equipment, including a drilling rig, fork lift, and a fleet of trucks

used by Holmes in its continued operations.  NW&A represented debtor Holmes

Laboratories in negotiations with these entities to restructure the financing, purchase the

equipment or otherwise settle the claims while permitting continued use of the equipment in

the operation of Holmes Laboratories.  Also during this time period, NW&A sought

continuances of the U.S. Trustee's motion to dismiss or convert the chapter 11 case in order

to allow the sales process to move forward.

    27.    NW&A has staffed its representation at all times to avoid duplication of effort

with the services of the consultants retained by the Debtor. NW&A has provided high

quality services on a variety of legal and factual issues at rates which favorably compare

with those of other law firms of similar experience and ability.

### E.   Detailed Summary

28.   In accordance with Local Bankruptcy Rule 5082-1(B)(1), the principal

activity categories performed by NW&A on behalf of the Debtor during the Final

Application Period generally have been characterized according to the subject matter

involved as required by the Guidelines. The principal activities are:

a.   General (Matter #001). NW&A seeks fees of $17,124.00 with respect

to this activity category.

b.   Employment and Fee Applications (Matter #002). NW&A seeks fees

of $10,257.50 with respect to this activity category. Compensation in this category made up

approximately 5.3 % of the compensation requested for the Final Application Period.

c.   Cash Collateral and DIP Financing (Matter #003). NW&A seeks fees

of $6,020.00 with respect to this activity category.

d.   Plan of Reorganization and Disclosure Statement (Matter #004).

NW&A seeks fees of $19,520.00 with respect to this activity category.

e.   Nelson Leasing - General (Matter #005). NW&A seeks fees of

$150.00 with respect to this activity category.

f.   Claims and Stay Relief (Matter #006). NW&A seeks fees of

$14,455.00 with respect to this activity category.

g.   Sale Transactions (Matter #007). NW&A seeks fees of $124,530.50

with respect to this activity category.

29.     The following principal activities undertaken by NW&A are, in accordance with Local Bankruptcy Rule 5082-1(B)(1), more particularly described as follows:

a.     <u>General (Matter # 001).</u>  This activity category pertains to the general administration of the case and all work that does not fit within more specific activity categories.  NW&A generally assisted the Debtors in administering, managing and coordinating the chapter 11 cases through reviewing docket entries, monitoring critical dates, preparing for conferences and discussing various strategic issues with the Debtors' representatives.  Shortly after assuming representation of the Debtors, NW&A reviewed docket entries and documentation relating to the chapter 11 case and began preparing and filing monthly operating reports for both Debtors.  NW&A reviewed and analyzed the U.S. Trustee's motion to convert or dismiss the chapter 11 cases, and prepared for and represented the Debtors at hearings on the U.S. Trustee's motion held in August, September, October, November and December of 2011. NW&A support personnel maintained and revised the service lists used in connection with the service of all pleadings filed by the Debtor, including the extensive service of notice of the Holmes Testing sale motion and related papers.

b.     <u>Employment and Fee Applications (Matter # 002).</u>  Neal Wolf and Dean Gramlich assisted Silverman in filing its two interim fee applications, both of which the Court approved.  NW&A also represented the Debtors with respect to various issues regarding fee applications of the Debtors' former counsel, Butler Rubin Saltarelli & Boyd, LLP ("BRSB"), and NW&A negotiated a 20% reduction in BRSB's fees.  Fees billed in this activity category amounted to $10,257.50 for the entire Final Application Period or approximately 5.3 % of NW&A's total fee requests.

    c.    <u>Cash Collateral and DIP Financing (Matter # 003)</u>.  Use of cash collateral and additional financing of the Debtors' operations was a persistent issue facing the Debtors during the administration of the case.  NW&A participated in ongoing negotiations with CenTrust regarding the procurement of additional financing to permit the Debtors to continue to operate pending asset sales.

    d.    <u>Plan of Reorganization and Disclosure Statement (Matter # 004)</u>.  This activity category includes all work relating to the Debtors' plan of reorganization.  NW&A's work included preparation of a motion to extend the exclusivity periods and the successful prosecution thereof.  NW&A worked with the Debtors and Silverman Consulting to develop a stand-alone chapter 11 plan, and engaged in extensive negotiations with CenTrust regarding elements of the plan.

    e.    <u>Nelson Leasing - General (Matter # 005)</u>.  This activity category pertains to the general administration of the Nelson Leasing case.  This activity category includes work performed on preparing and filing monthly operating reports for Nelson Leasing.

    f.    <u>Claims and Stay Relief (Matter # 006)</u>.  This activity category includes matters relating to creditor claims, objections, and requests for stay relief.  NW&A worked to oppose various motions for stay relief filed by Ally Financial and Wells Fargo Leasing.  Ally Financial sought to take possession of the truck fleet used by Holmes Laboratories in the operation of its business.  NW&A worked to oppose Ally Financial's stay relief motion and negotiated with Ally Financial to achieve a settlement that would permit Holmes Laboratories to continue use of its truck fleet.  Similarly, NW&A opposed the stay relief motion of Wells Fargo Leasing seeking to take possession of a forklift used

by Holmes Laboratories in its daily operations. NW&A worked on behalf of the Debtor to negotiate its purchase of the forklift to permit its continued use of the forklift. NW&A also negotiated on behalf of the Debtors for continued use of a drill rig leased from Daimler Chrysler, and counseled the Debtors with respect to various other claims by creditors, as well as a proof of claim filed by Holmes Laboratories in the Kirk Construction bankruptcy case.

   g. <u>Sale Transactions (Matter # 007).</u>  This activity category includes all matters relating to the sale of the Holmes Laboratories' assets. Specifically, this activity category includes, among other things, all work performed in connection with: (1) the sale of the majority of the Holmes Laboratories business to Holmes Testing (Windmill's designee); (2) the sale of the Richardson, Texas segment of the business to D&S; and (3) work performed to consummate a sale of the remaining assets of Holmes Laboratories. NW&A attorneys Wolf and Gramlich engaged in extensive negotiations with Windmill and CenTrust regarding the terms and conditions of the sale of the assets to Holmes Testing, as well as the sale of the Richardson, Texas segment to D&S. NW&A prepared a confidentiality agreement, negotiated the terms of the sales, and worked with the Debtors and Silverman to evaluate the sale terms. NW&A took the lead in drafting the Section 363 motion for the sale of the Holmes Laboratories assets, and prepared the various other sale-related pleadings and orders. NW&A attorney Gramlich drafted the motion to set bid procedures and for approval of the Holmes Testing bid, and concurrently negotiated the terms of the asset purchase agreement with CenTrust and Windmill. NW&A attorneys negotiated with the U.S. Trustee to continue the Trustee's motion to dismiss or convert the chapter 11 cases to permit additional time in which to consummate the sales. Furthermore,

NW&A negotiated with CenTrust to provide additional financing to permit the Debtors to make payroll pending closing of the sales. NW&A legal assistants assisted in the preparation and mailing of the various sale and auction notices. NW&A attorneys and legal assistants also performed substantial legal research, and engaged in extensive discussions with the Nuclear Regulatory Commission regarding the status of the gauges containing trace radioactive elements. NW&A attorneys prepared for and represented the Holmes Laboratories at various hearings regarding the sale motions and the U.S Trustee's motion to dismiss or convert. NW&A also prepared the necessary documents for, and represented the Debtors at the closings of each sale. Also, NW&A began discussions with JRH and D&S regarding the sale of Holmes Laboratories' equipment and other assets in Houston, Texas.

## IV.   DESCRIPTION OF EXPENSES INCURRED

30.   NW&A seeks reimbursement of its actual and necessary expenses incurred in rendering services during the Final Application Period. The total amount of expenses for which reimbursement is sought is $4,972.93. **Exhibit E** hereto is a summary by type of all expenses incurred by NW&A during the Final Application Period.

31.   NW&A incurred expenses in connection with the service of various motions, including copying and courier charges. NW&A also incurred expenses in connection with legal research performed using LexisNexis, for telephone conference calling services and local travel expenses. NW&A has not requested reimbursement for expensive meals or other luxury items. NW&A has not marked up the expenses for which NW&A seeks reimbursement. Also, NW&A fronted payment of sale-related expenses at a time when no source for reimbursement was available to NW&A.

## V.    THE COMPENSATION AND EXPENSE REIMBURSEMENT SOUGHT BY NW&A ARE REASONABLE

32.    To grant a request for compensation under sections 330 and 331 of the

Bankruptcy Code, a bankruptcy court must find that such request is reasonable.  As

amended in 1994, Section 330 states:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issues, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[2]

---

[2]    The factors set forth are quite similar to those prevailing at the time of section 330's amendment. The often cited case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), sets forth the following factors to be considered in approving attorneys' fees:

a) the time and labor required; (b) the novelty and difficulty of the questions presented; (c) the skill required to perform the services properly; (d) the preclusion of other employment due to acceptance of the case; (e) the customary fee to non-bankruptcy clients for the services rendered; (f) whether the fee is fixed or contingent; (g) time limitations imposed by the client or other circumstances; (j) the amount involved and the results obtained; (i) the experience, reputation and ability of the attorneys; (j) the undesirability of the case;(k) the nature and length of the professional relationship with the client; and (l) awards in similar cases.

It should be noted that Section 330(a)(3) requires consideration of all relevant factors, including those specifically enumerated. Under Section 102(3) of the Bankruptcy Code, use of the term "including" is not limiting.

33.    Bankruptcy courts in this District normally engage in the so-called "lodestar" approach." The lodestar approach is a two-step process involving the calculation of a lodestar figure (the time expended multiplied by hourly rate) and adjustment of this figure based on the factors referenced above. Based on the lodestar approach, NW&A is entitled to the compensation requested for the Final Application Period. NW&A provided necessary and important services to the Debtors in connection with this case. In particular, NW&A attorneys successfully avoided conversion of the case to chapter 7 and achieved the continued employment of all of the Debtors' employees through the sale of substantially all of the business of Holmes Laboratories to qualified purchasers. The three senior attorneys at NW&A—Neal Wolf, Gerald Munitz and Dean Gramlich—have a combined 112 years of experience in bankruptcy practice and are well-regarded in the field. The rates charged by NW&A are reasonable and commensurate with or below that of the billing rates of other bankruptcy attorneys with similar levels of experience. As demonstrated above, NW&A's expenses were actual and necessary in light of the work required.

34.    Of further importance is the fact that NW&A continued work on these cases at a time when there was no source of compensation whatsoever. Indeed, it is highly unlikely that NW&A will recover more than 40% of its aggregate fees and expenses approved by this Court. It will share the $93,500 Carve Out Fund with the estates' two other professionals, BRSB and Silverman. Furthermore, NW&A has written off all of the substantial pre-conversion fees and expenses incurred between December 8, 2011, the date of the closing of the sale to Holmes Testing and December 28, 2011, the conversion date. NW&A also is unlikely to recover and fees and expenses incurred in connection with its representation of Holmes Laboratories after the conversion of the case. NW&A continues

to represent Debtor Holmes Laboratories in the chapter 7 case with no chance of compensation.

## VI.    REQUEST TO APPROVE LIMTED NOTICE

35.    NW&A has provided notice of this Final Application to the attached **Service List A** and those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). NW&A has provided full copies of this Final Application to CenTrust, Windmill, Bank of Kenosha, the Office of the U.S. Trustee and the chapter 7 trustee.

36.    NW&A requests that the Court excuse the notice requirements of Bankruptcy Rule 2002(a) (6) and approve the limited notice of the Final Application to parties on Service List A as sufficient and appropriate under the circumstances. Limited notice of the Final Application is sufficient in light of the expense to NW&A of individually serving all creditors and parties in interest and the lack of an offsetting benefit given that the United States Trustee and the other principal parties in interest will receive full copies of this Final Application. NW&A obviously has not and will not request reimbursement of any fees or expenses incurred in connection with preparing and serving this Final Application.

## VII.    CONCLUSION

37.    For the foregoing reasons, the fees requested in this Final Application are reasonable and reflect the value of the services provided to the Debtors in accordance with section 330 of the Bankruptcy Code. Moreover, NW&A has requested reimbursement only of its actual and necessary expenses.

**WHEREFORE**, NW&A respectfully requests that the Court enter an Order:

a.    allowing on a final basis compensation of $192,057.00 for legal

services rendered during the Final Application Period;

       b.    allowing on a final basis reimbursement of expenses incurred during the Final Application Period in the amount of $4,972.93;

       c.    directing CenTrust to pay NW&A a pro rata share of its fees and expenses from the Carve Out Fund in accordance with the provisions of paragraph 9(f) of the Holmes Testing Sale Order; and

       d.    granting such other and further relief as the Court deems appropriate.

Dated: February 14, 2012

By: /s/ Dean C. Gramlich
Neal L. Wolf (ARDC No. 6186361)
Dean C. Gramlich (ARDC No. 6191587)
NEAL WOLF & ASSOCIATES, LLC
Counsel to Debtors H.H. Holmes Testing
Laboratories, Inc. and Nelson Leasing
155 N. Wacker Drive, Suite 1910
Chicago, IL 60606
Main: (312) 228-4990
Fax: (312) 228-4988
Email: dgramlich@nealwolflaw.com