## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| H.H. HOLMES TESTING | ) | |
| LABORATORIES, INC. | ) | Case No. 10 B 55500 |
| | ) | |
| | ) | Hon. Timothy A. Barnes |
| | ) | Bankruptcy Judge |
| **Debtor** | | |

### COVER SHEET FOR APPLICATION FOR PROFESSIONAL COMPENSATION

| **Name of Applicant:** | Lakelaw |
|---|---|
| **Authorized to Provide Professional Services to:** | David P. Leibowitz, Trustee for the Estate of H.H. Holmes Testing Laboratories, Inc. |
| **Date of Order Authorizing Employment:** | February 15, 2012, retroactive to December 28, 2011 |
| **Period for which Compensation is Sought:** | January 6, 2012 – May 3, 2017 |
| **Amount of Fees Sought:** | $25,297.50 |
| **Amount of Expense Reimbursement Sought:** | $2,371.24 |
| **This is an:** | Interim Application ☐   Final Application  X |

The aggregate amount of fees and expenses <u>paid</u> to the Applicant to date for services rendered and expenses incurred herein is:    $0.00

Date:  May 23, 2017                    By:    /s/ David P. Leibowitz
                                                        Applicant

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| H.H. HOLMES TESTING | ) | |
| LABORATORIES, INC. | ) | Case No. 10 B 55500 |
| | ) | |
| | ) | Hon. Timothy A. Barnes |
| | ) | Bankruptcy Judge |
| **Debtor** | | |

### APPLICATION OF THE LAW OFFICES OF DAVID P. LEIBOWITZ, LLC, d/b/a LAKELAW, AS COUNSEL TO CHAPTER 7 TRUSTEE, FOR FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

The Law Offices of David P. Leibowitz, LLC, d/b/a Lakelaw ("Lakelaw"), attorneys for David P. Leibowitz, the Chapter 7 Trustee for the estate of H.H. Holmes Testing Laboratories, Inc. ("Debtor"), hereby respectfully submits its first and final application for allowance of compensation in the amount of $25,297.50 for 76.2 hours of professional services rendered as counsel to the Chapter 7 Trustee for the period beginning January 6, 2012 through and including May 3, 2017 ("Application Period"), and reimbursement of $2,371.24 for actual costs incurred incident to those services. Lakelaw's services were beneficial to the bankruptcy estate and are compensable pursuant to § 330(a) of the Bankruptcy Code and in accordance with Bankruptcy Rules 2002(a)(6) and 2016(a) and Local Bankruptcy Rule 5082-1. In support of this Application, the Trustee states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant, *inter alia*, to 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTUAL AND PROCEDURAL BACKGROUND

2.    H.H. Holmes Testing Laboratories, Inc. filed a voluntary petition under chapter 11 of the Bankruptcy Code on December 16, 2010.  The case was converted to a case under chapter 7 of the Bankruptcy Code on December 28, 2011.  David P. Leibowitz is the duly appointed, qualified, and acting chapter 7 trustee in this case.

3.    After his appointment, the Trustee applied to this Court for an order approving the retention of Lakelaw as his counsel.  On February 15, 2012, this Court approved the retention of Lakelaw, retroactive to December 28, 2011, to assist the Trustee in the administration of the estate's assets.

## NATURE OF SERVICES PROVIDED BY LAKELAW

4.    Lakelaw assisted the Trustee in the administration of the estate's assets in connection with the drafting, filing, and presentation of motions for Rule 2004 examinations of Chase Bank and of CenTrust Bank, with document production requests, in an effort to obtain records of Debtor's financial transactions, many of which were missing or had not been provided.  As a result of Lakelaw's efforts, sufficient information was obtained to perform the preference analysis and to facilitate the filing of avoidance actions by special counsel.

Lakelaw also assisted the Trustee in the drafting, filing, and presentation of the motions to sell certain assets in Houston and to retain an auctioneer to sell multiple vehicles that remained in the estate at the time of conversion from chapter 11.  Lakelaw reviewed the objections that were filed to these motions, including an objection by CenTrust Bank, which had a blanket lien on all the assets in Houston, as well as an objection by Holmes Testing, Inc., the entity that purchased the bulk of Debtor's assets pre-conversion, to the proposed sale of vehicles.  The prior purchaser asserted that many of the vehicles had been included in the pre-conversion sale.  Lakelaw reviewed the prior sale agreements and the orders authorizing sale in an effort to identify and verify those

vehicles that were not included in the sales that took place shortly before conversion. After such review, Lakelaw conferred and corresponded and ultimately, following continued hearings, negotiated a resolution with counsel for the prior purchaser and counsel for CenTrust Bank as to those vehicles that would be listed in the order authorizing sale by the auctioneer. After these issues were resolved, Lakelaw determined that the estate held a 50% ownership interest in another vehicle. Lakelaw negotiated a sale of that vehicle to Debtor's former principal, the other 50% owner, and prepared and presented the motion for approval of same. Finally, after all estate assets were otherwise administered, Lakelaw prepared, filed, and presented a motion to sell the estate's remnant assets.

After the assets were fully administered by the Trustee, Lakelaw reviewed the numerous secured claims that were filed in this case, including secured tax claims, and determined that several were objectionable and would have eliminated the distribution otherwise payable to chapter 11 administrative claimants (there being no funds for other unsecured creditors). With respect to the secured tax claims, Lakelaw first reviewed the motions, orders, and asset purchase agreements from the pre-conversion sales to determine and verify that any collateral for such claims had been conveyed free and clear of liens under section 363(f) of the Bankruptcy Code. Lakelaw then researched the caselaw under section 502(b)(3) to determine whether that provision's requirements for disallowance were met as to each of the secured tax claims filed in this case. Finding that such requirements were met, Lakelaw drafted the objections, together with factual declarations in support in order to overcome the claims' prima facie validity, and attended the hearings on the objections. Lakelaw also prepared and presented objections to the secured claims filed by CenTrust Bank, inasmuch as no collateral for such claims or proceeds of same remains in this estate. There were a number of other secured claims, which had been collateralized by vehicles, and Lakelaw prepared the necessary objections or, as in the case of claim 45 of U.S. Bank, successfully solicited a

withdrawal of claim in order to avoid the cost and expense of preparing and presenting further objections.

Finally, Lakelaw prepared, filed, and presented an application for authority to pay penalties to the IRS and prepared the instant fee application and the applications for compensation to the Trustee's accountant.

5.     The time records attached to this fee application set forth in adequate detail the nature and extent of the services rendered by Lakelaw assisting the Trustee in carrying out his duties.

6.     Lakelaw has made every effort to ensure that the services it performed for the Trustee were handled by qualified persons at the lowest hourly rates possible, consistent with the skill-set required for a particular task.

7.     In compliance with Local Bankruptcy Rule 5082-1, Lakelaw has classified its services into six (6) separate categories: (a) asset analysis and discovery; (b) asset disposition; (c) case administration; (d) claims administration and objections; (e) litigation; and (f) fee/employment applications.

8.     The following is a general description of the tasks performed in each of Lakelaw's principal categories of activity:

- **Asset Analysis and Discovery:** (Fees: $2,162.50 / Hours: 6.8)  This category includes services rendered in drafting, filing, and presenting motions for Rule 2004 examinations of Chase Bank and of CenTrust Bank, in an effort to obtain records of Debtor's financial transactions, many of which were missing or had not been provided.  Also included are services in the initial assessment of preference issues and the need for a preference analysis, as well as efforts to identify ownership of a vehicle believed to be in the possession of Debtor's principal.

- **Asset Disposition:** (Fees: $8,130.00 / Hours: 24.6)  Services rendered in the drafting, filing, and presentation of the Trustee's motions to sell certain assets in Houston and to retain an auctioneer to sell multiple vehicles that remained in the estate at the time of conversion from chapter 11.  Lakelaw also reviewed the objections that were filed to these motions, including an objection by CenTrust Bank, which had a blanket lien on all the assets in Houston, as well as an objection by Holmes Testing, Inc., the entity that purchased the bulk of Debtor's assets pre-conversion, to the proposed sale of vehicles, claiming that many

of them were included in the pre-conversion sale. Lakelaw reviewed the prior motions to sell, the accompanying asset purchase agreements, and orders in an effort to identify and verify those vehicles that were not included in the sales that took place shortly before conversion. After such review, Lakelaw conferred and corresponded and ultimately, following continued hearings, negotiated a resolution with counsel for Holmes Testing, Inc. and counsel for CenTrust as to those vehicles that would be listed in the order authorizing sale by the auctioneer. After these issues were resolved, Lakelaw negotiated a sale of a separate vehicle, possessed and 50% owned by Debtor's former principal, and prepared and presented the motion for approval of same. Finally, after all estate assets were otherwise administered, Lakelaw prepared, filed, and presented a motion to sell the estate's remnant assets.

- **Case Administration:** (Fees: $4,162.50 / Hours: 16.6) Services rendered in this category include conferring and corresponding with Chase Bank, with counsel for CenTrust, and with counsel for the purchaser of the bulk of Debtor's assets regarding bank statements and other documents of the Debtor corporation needed by the estate for its preference analysis, for the identification and location of vehicles, and for other matters; correspondence with the Bank of Kenosha regarding those vehicles being sold that were subject to the bank's lien; correspondence with counsel for the purchaser of a separate vehicle being sold by the Trustee at private sale; and various motions, including an application for authority to pay penalties to the IRS.

- **Claims Administration and Objections:** (Fees: $7,545 / Hours: 17.7) Numerous secured claims filed in this case, including secured tax claims, were objectionable and would have eliminated the distribution otherwise payable to chapter 11 administrative claimants (there being no funds for other unsecured creditors). With respect to the secured tax claims, Lakelaw first reviewed the motions, orders, and asset purchase agreements from the pre-conversion sales to determine and verify that any collateral for such claims had been conveyed free and clear of liens under section 363(f) of the Bankruptcy Code. Lakelaw then researched the caselaw under section 502(b)(3) to determine whether that provision's requirements for disallowance were met as to each of the secured tax claims filed in this case. Finding that such requirements were met, Lakelaw drafted the objections, together with factual declarations in support in order to overcome the claims' prima facie validity, and attended the hearings on the objections. Lakelaw also prepared and presented objections to the secured claims filed by CenTrust Bank, inasmuch as no collateral for such claims or proceeds of same remains in this estate. There were a number of other secured claims, which had been collateralized by vehicles, and Lakelaw prepared the necessary objections or, as in the case of claim 45 of U.S. Bank, successfully solicited a withdrawal of claim in order to avoid the cost and expense of preparing and presenting objections.

- **Litigation:** (Fees: $1,355 / Hours: 3.8) Services rendered in securing and organizing documents for the preference analysis; corresponding with the Trustee's special counsel and counsel for CenTrust regarding additional documents needed for the analysis; conferring and corresponding with special counsel regarding potential settlements of the avoidance actions and reviewing the settlement agreements proposed; and corresponding with special counsel regarding the obtaining of default judgments where necessary.

- **Fee/Employment Applications:** (Fees: $1,942.50 / Hours: 6.7) Services pertaining to employment of the Trustee's general bankruptcy counsel, his special litigation counsel, and his accountant, as well as services rendered in the preparation of this fee application and the application of the Trustee's accountant.

### REQUESTED RELIEF

9.   The Trustee requests that Lakelaw be allowed fees for work performed during the Application Period in the amount of $25,297.50, together with expenses of $2,371.24. Attached hereto as Exhibit A is a detailed itemization of the legal services performed.

10.  The Trustee requests entry of an order authorizing and directing payment of the fees and expenses of Lakelaw in the total amount of $27,668.74 for legal services.

### SUMMARY OF SERVICES RENDERED BY LAKELAW

11.  In summary, the total compensation sought for each professional with respect to the aforementioned categories is as follows:

| NAME OF PROFESSIONAL PERSON | POSITION | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| BRAND, J. | ATTORNEY | $375.00 | 22.6 | $8,475.00 |
| DEGER, L. | PARALEGAL | $150.00 | .6 | $90.00 |
| GARCIA, M. | PARALEGAL | $175.00 | 5.2 | $910.00 |
| LEIBOWITZ, D. | ATTORNEY | $650.00 | 7.1 | $4,615.00 |
| LEIBOWITZ, R. | PARALEGAL | $175.00 | 1.7 | $297.50 |
| STORER, J. | ATTORNEY | $375.00 | 20.3 | $7,612.50 |
| THOMAS, A. | PARALEGAL | $175.00 | 18.7 | $3,297.50 |
| **GRAND TOTAL:** | | | **76.2** | **$25,297.50** |

12.  The hourly rates charged by Lakelaw in the course of its representation of the Trustee compare favorably with the rates charged by other Chicago metropolitan firms having attorneys and paralegals with similar experience and expertise. Further, the amount of time spent by

Lakelaw with respect to representing the Trustee is reasonable given the difficulty of the issues presented, the time constraints imposed by the circumstances, the amounts at stake, and the ultimate benefit to the estate.

13. Lakelaw has always conscientiously attempted to avoid having multiple attorneys appear or convene on behalf of the Trustee. In certain circumstances, however, it may have been necessary for more than one of Lakelaw's attorneys to appear in Court at the same time. When possible, Lakelaw attempts to have one attorney handle multiple matters on the Court's calendar. Similarly, on certain occasions, Lakelaw may have had more than one attorney attend a meeting to strategize on issues that had particular import in this case. To the greatest extent possible, meetings, court appearances, negotiations, and other matters were handled on an individual basis.

14. Given the Johnson criteria codified in 11 U.S.C. § 330(a)(3), namely: (i) the nature, extent and value of the services; (ii) the time spent; (iii) the rates charged for such services; (iv) the performance of the services within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (v) the reasonableness of the services based on the compensation charged by comparably skilled practitioners in other bankruptcy and non-bankruptcy matters, Lakelaw respectfully submits that the requested final compensation represents a fair and reasonable amount that should be allowed in full.

### **EXPENSES INCURRED BY LAKELAW**

15. The actual and necessary costs expended by Lakelaw during the Application Period are summarized below and set forth in detail in Exhibit B attached hereto. The requested reimbursement amount for expenses incurred is $2,371.24. All of the expenses for which reimbursement is sought are expenses that Lakelaw customarily recoups from all of its clients.

16. All expenses incurred by Lakelaw were ordinary and necessary expenses. All expenses billed to the Trustee were billed in the same manner as Lakelaw bills non-bankruptcy clients. Further, the expenses for which reimbursement is sought constitute the types and amounts previously allowed by bankruptcy judges in this and other districts.

17. The specific expenses incurred during the Application Period for which reimbursement is requested are as follows:

| Expense Category | Amount |
| --- | --- |
| Copies | $654.50 |
| Postage | $325.23 |
| FedEx | $36.84 |
| Subpoena fees | $281.70 |
| Process server fees | $896.97 |
| Court Filing Fees | $176.00 |
| Total | $2,371.24 |

## COMPLIANCE WITH 11 U.S.C. § 504

18. Other than as provided for and allowed by 11 U.S.C. § 504, there is no agreement between Lakelaw and any other firm, person or entity for the sharing or division of any compensation paid or payable to Lakelaw.

## NOTICE

19. At least twenty-one days' notice of this application has been provided to the Office of the United States Trustee, all creditors who have filed claims in this case, and to parties who have previously requested notice of pleadings and proceedings herein. Applicant suggests that no further notice is necessary and requests that the Court find that no other or further notice is required.

**WHEREFORE**, the Trustee respectfully requests entry of an order:

A) Allowing Lakelaw compensation in the amount of $25,297.50 for professional services rendered on behalf of the Trustee;

B) Allowing Lakelaw reimbursement of expenses incurred in the amount of $2,371.24;

C) Authorizing the Trustee to pay all allowed compensation and expense reimbursement to Lakelaw;

D) Finding that due and adequate notice has been given, and

E) Granting such other and further relief as may be equitable in the circumstances.

    Respectfully submitted,

**David P. Leibowitz, Chapter 7 Trustee for the Estate of H.H. HOLMES TESTING LABORATORIES, INC.**

By: /s/ David P. Leibowitz
David P. Leibowitz (ARDC # 1612271)
Lakelaw
53 West Jackson Boulevard, Suite 1610
Chicago, Illinois 60604
847.249.9100

David P. Leibowitz (ARDC # 1612271)
Lakelaw
53 West Jackson Boulevard, Suite 1610
Chicago, Illinois 60604
847.249.9100